IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**EDWARD R. GARCIA,**

       **Plaintiff,**

vs.                                                          No.  03cv0700 DJS

**JO ANNE B. BARNHART,**
**COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**

## MEMORANDUM OPINION

This matter is before the Court on Plaintiff's (Garcia's) Motion to Reverse and Remand for a Rehearing **[Doc. No. 11]**, filed January 9, 2004, and fully briefed on April 2, 2004.  On November 27, 2002, the Commissioner of Social Security issued a final decision denying Garcia's application for disability insurance benefits and supplemental security income benefits.   Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds the motion to remand is not well taken and will be DENIED.

### I.  Factual and Procedural Background

Garcia, now fifty-five years old, filed his application for disability insurance benefits and supplemental security income on November 3, 1997, alleging disability since December 15, 1994, due to blindness of the left eye, arthritic changes in his hands and wrists, bilateral carpal tunnel syndrome, bilateral rotator cuff damage, and mechanical strain of the lumbosacral spine with probable degenerative joint disease.  Tr. 11.  Garcia has a high school education and two years of college.  Garcia has past relevant work as a drywall finisher and cosmetologist.  Tr. 244.  On

October 21, 1999, the Commissioner's Administrative Law Judge denied benefits, finding that Garcia's impairments did not meet or equal in severity any of the disorders described in the Listing of Impairments, Subpart P, Appendix 1, Social Security Regulations No. 4.  Tr. 12.  Garcia filed a Request for Review of the decision by the Appeals Council.  After the Appeals Council declined the request for review, Garcia appealed to the district court.  On December 19, 2001, the Honorable Bruce D. Black adopted the magistrate judge's recommendation that the case be remanded to the Commissioner for "clarification of the step five analysis, including a rehearing if necessary."  Tr. 300.

On October 28, 2002, the ALJ held another hearing.  On November 27, 2002, the Commissioner's Administrative Law Judge (ALJ) again denied benefits, finding that Garcia's impairments were severe but did not singly or in combination meet or equal in severity any of the disorders described in the Listing of Impairments, Subpart P, Appendix 1.  Tr. 244.  The ALJ further found Garcia retained the residual functional capacity (RFC) for a wide range of light to medium work. Tr. 245.  The ALJ found Garcia was able to lift and carry up to 40 pounds occasionally and 20 pounds frequently, stand and/or walk for two hour intervals, with reasonable opportunities to change position, and for 6 hours in an 8-hour workday. Tr. 245.  The ALJ further found Garcia's left eye blindness limited him from working at unprotected heights or around dangerous equipment or uneven surfaces.  The ALJ also found Garcia's rotator cuff syndrome precluded him from working extensively above shoulder level.  *Id.*  As to his credibility, the ALJ found Garcia' testimony was inconsistent and lacking in credibility. Tr. 17.  Garcia filed a Request for Review of the decision by the Appeals Council.  On May 16, 2003, the Appeals Council denied Garcia's request for review of the ALJ's decision.  Hence, the decision of the ALJ

became the final decision of the Commissioner for judicial review purposes.  Garcia seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence of record must be considered in making those findings, *see Barker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989).  "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."  *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).  Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met.  *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

## III.  Discussion

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson v. Sullivan*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id.*

In support of his motion to reverse and remand, Garcia makes the following arguments: (1) the law of the case prohibits the second ALJ's finding regarding his RFC; (2) the ALJ's adoption of the vocational expert's (VE) testimony was contrary to the evidence and the law; and (3) the ALJ's pain and credibility finding is contrary to the evidence and the law.

**A.  Law of the Case**

The first ALJ found Garcia retained the RFC to perform light work, limited by the inability to perform overhead lifting and his visual impairment.  Tr. 4.  The second ALJ found Garcia retained the RFC for a wide range of light to medium work.  Tr. 245.  Specifically, the ALJ found Garcia was able to lift and carry up to 40 pounds occasionally and 20 pounds frequently, stand and/or walk for two hour intervals, with reasonable opportunities to change position, and for 6 hours in an 8-hour workday.  Tr. 245.  The ALJ further found Garcia's left eye blindness limited him from working at unprotected heights or around dangerous equipment or uneven surfaces.  The ALJ also found Garcia's rotator cuff syndrome precluded him from working extensively above shoulder level.  According to Garcia, the doctrine of law of the case precluded the second ALJ from changing the first ALJ's RFC finding.

In *Campbell v. Bowen*, 822 F.2d 1518 (10th Cir. 1987), the Tenth Circuit rejected a similar argument finding:

> The Secretary did not err, as appellant contends, by first finding a residual functional capacity of 'sedentary' in his November 22, 1982 decision, and then on remand, changing that finding to a residual functional capacity of 'light' following the December 23, 1983 hearing at which Campbell testified.  The regulations provide that '[t]he administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order.'  20 C.F.R. § 404.977(b)(1986).  The Appeals Council directed the ALJ to obtain testimony from a vocational expert as to the transferability of Campbell's skills to a range of work 'within the claimant's residual functional capacity.'  The ALJ's redetermination of the residual functional capacity was not inconsistent with this order.  Nor did the order bind the ALJ to his earlier decision.  To hold otherwise would discourage administrative law judges from reviewing the record on remand, checking initial findings of fact, and making corrections, if appropriate.  We decline to constrain the ALJ in a manner not mandated by the regulations.

*Id.* at 1521-522.  The Appeals Council's Order of Remand states, "the Appeals Council vacates the final decision of the Commissioner in this case and remands the case to an Administrative Law

5

Judge for further proceedings consistent with the order of the court." Tr. 302. The district court remanded the case "for further clarification of the step five analysis, including a rehearing if necessary." Tr. 298, 300. The Order of Remand did not bind the second ALJ to the first ALJ's decision. Additionally, the second ALJ's RFC finding is not inconsistent with the order. Accordingly, the Court finds the Order of Remand did not preclude the second ALJ from redetermining Garcia's RFC.

Garcia also argues that the ALJ's RFC finding that he can perform medium or light work is not supported by substantial evidence. Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. §§ 404.1567(c) & 416.967(c). If someone can do medium work, he can also do sedentary and light work. *Id.* According to Garcia, William Levitt, D.O., an agency consultant, evaluated him in December 1997 and opined he was capable of only sedentary activity. Tr. 167-173. Dr. Levitt limited Garcia to lifting 15 pounds occasionally and opined Garcia was "unable to reach above his head." Tr. 170-171.

In making his RFC determination, the ALJ found:

Curiously, although this case has been in litigation since 1997, there are no recent medical reports or record concerning his impairments. <u>There are only two reports of medical examination in the record, both predating the initial decision of the Administrative Law Judge</u>. Mr. Garcia <u>has not seen a doctor since 1997</u>, is not engaged in any therapy programs, and <u>takes no medication</u> except for various herbs consistent with his vegetarian diet, and ibuprofin (sic) for pain.

<u>The medical report is that of Dr. William Levitt dated December 24, 1997 (Exhibit 3F); the second is that of Anthony P. Reeve, MD, of October 4, 1999 (Exhibit 11F). Both reports are those of independent medical consults performed at the request of the State Agency. There are no reports from a treating source</u>.

Mr. Garcia's testimony was inconsistent and lacking in credibility. He told Dr. Reeves that he could lift up to 50 pounds on occasion, but his testimony was that he was limited to

> only 20 pounds. He said that he can stand for no more than 20 minutes and walk about one city block. Yet, he enjoys playing basketball, although only 15 minutes by his testimony. He works at various odd jobs for about 4 hours a week to pay his bills. Although this is not at substantial gainful activity levels, it is evidence of his overall functional capacity. He engages in church activity at least once a week and participates in his neighborhood watch. He has a driver's license and drives as needed. He socializes and visits family and friends. He helps with the household chores, vacuuming, sweeping, cooking, doing laundry and raking leaves in the yard. He takes care of his grandchildren, and his daily activities consist of taking care of them, doing the morning household chores, visiting friends and doing odd jobs when available.
>
> I have carefully considered the evidence before me, including the testimony, the previous ALJ decision, the directives of the Court, the evaluations of the Disability Determination Services and the limited medical record available. Having done so, I find that Mr. Garcia has no relevant transferable skills from his past work. He has severe impairments that limit his ability to engage in substantial gainful activity, but not to the extent alleged. <u>Accordingly, it is my conclusion that he retains the residual functional capacity for a wide range of light to medium work. I find that he is able to lift and carry up to 40 pounds on occasion and 20 pound frequently. He is able to stand and/or walk for two hour intervals with reasonable opportunities to change position, and for six hours during an ordinary workday. His blind left eye limits him from working at unprotected heights or around dangerous equipment. His rotator cuff syndrome precludes him from working extensively above shoulder level. Uneven surfaces should be avoided because of the visual impairment. Although he has a mild carpal tunnel syndrome, it does not significantly limit his capacity for work that does not require repetitive hand functions. Although he alleges that he has a severe mood disorder, this in not supported by any medical evidence and is given no credence by me. He has no nonexertional impairments except for the left eye blindness.</u>

Tr. 244-245 (emphasis added). Substantial evidence supports the ALJ's RFC determination. Dr. Levitt evaluated Garcia on December 24, 1997. Dr. Levitt performed a physical examination and noted:

> He is alert and oriented times three, appropriately groomed and dressed. He is right hand dominant. When asked to rise from a sitting to a standing position, he does so without difficulty. While standing erect in front of me, his right shoulder is visibly more cephalad than his left. He does have visible paraspinal fullness in the cervical and thoracic areas. He has decreased range of motion in the shoulder and the lumbar spine, but all other range of motions are normal. See range of motion form. He has some mild arthritic changes in his hands and wrists bilaterally, but his range of motion is good. There is no crepitus or joint effusion. No synovial thickening is noted. He has no difficulty heel and toe walking. His deep tendon reflexes are 2+/4+ bilaterally in all areas. Negative EHL, negative SLR. Neurovascularly, his lower extremities are intact though movement against resistance causes pain referred tot he LS spine. Upper extremities are neurovascularly intact, but he

> does have a positive Finkelstein's test, and a positive Phalen's sign consistent with bilateral carpal tunnel syndrome. There is no sign of thenar atrophy or decreased range of motion or grip strength in the bilateral hands.
>
> ** ** ** ** ** **
>
> Discussion: I do believe this patient has a medically determinable impairment, which affects his ability to do work-related activity, but is only in regards to lifting heavy objects above his head. If he continues to do this, eventually the tendons in his rotator cuff will be completely sawed through, and in cases like this, surgical repair generally does not regain the patient's full range of motion. But other than that and the impairment from the blindness in his left eye, I believe he is capable of sedentary activity given his educational history and age. He would need job modification in order to be successful in employment, but I see no other reason for him being impaired or disabled.

Tr. 168-169.

Dr. Anthony Reeve, the medical director of Industrial Rehabilitation Clinics, performed a Disability Determination Examination on October 4, 1999. Tr. 190-193. At that time, Garcia reported he could lift approximately 50 pounds on an occasional basis. Tr. 190. Dr. Reeve also opined Garcia was functionally capable of lifting up to 50 pounds. Dr. Reeve reviewed Garcia's medical record, including Dr. Levitt's findings and noted:

> The medical records were provided for my review at the time of this evaluation. Dr. Lovett (sic) had done a complete evaluation on December 24, 1997. Dr. Lovett (sic) felt that the patient had blindness in his eye, musculoskeletal low back pain, and rotator cuff damage secondary to repetitive injury, as well as carpal tunnel syndrome. His final discussion was that the patient had a medically determined impairment. He would need job modification to be successful in employment. He felt the patient had no other reason for disability. <u>The patient's range of motion testing at that time was essentially normal. He had an EMG and nerve conduction study, which showed mild carpal tunnel syndrome from the University of New Mexico.</u> The patient also had a three-face bone scan of the wrist, which demonstrated mild abnormalities, nothing specific. The patient also had x-rays done of the hands, which showed mild deformities and fragments in the region of the left fifth PIP joint, correlation to possible previous trauma or degenerative changes.

Tr. 191 (emphasis added). Dr. Reeve performed a physical examination and found in pertinent part:

> MUSCULOSKELETAL: In the cervical neck the patient had full range of motion in flexion, extension, lateral flexion, and rotation. In the upper extremities, the patient was able to forward abduct to 150, forward flex to 150. He had full range of motion around

8

    the elbow and wrist. In the lower extremities, the patient had full range of motion around the knee and ankle. Leg lengths were grossly symmetrical. Thigh and calf circumferences were visually inspected and found to be symmetrical. BACK: He was able to flex to 90 degrees, extend to 20 degrees, rotate to 20 degrees. Negative straight leg raise. Trigger points were not identified on the patient's examination.

    NEUROLOGICAL EXAMINATION:

    ORIENTATION: The patient was alert and oriented X 3.
    CRANIAL NERVES: Cranial nerves II-XII were intact.
    MOTOR: Hip extensors, gluteus medius, hip flexors, quads and dorsi-/planter flexors were 5/5.
    SENSORY: Sensory examination is intact.
    REFLEXES: Reflexes are 2+ at the biceps, triceps, brachial radialis.
    VIBRATORY SENSE: Intact.
    PROPRIOCEPTION: Normal.
    VISUAL FIELDS: Normal.
    AMBULATION: The patient ambulated normally.

    IMPRESSION:
    1. Left eye blindness.
    2. Mild carpal tunnel syndrom.
    3. Mechanical strain of the lumbosacral spine, probably degenerative joint disease.
    4. Medically stable.

    VOCATIONAL STATUS:
    <u>Based on the patient's current presentation, his vocational status would be in the light to medium duty category. I would probably restrict him from 35 to 40 pounds a day in terms of his lifting capacity. However, the patient can work a full eight-hour day with restrictions. The patient should probably avoid elevated surfaces due to his visual loss.</u>

    FUTURE MEDICAL MANAGEMENT:
    In my opinion, the patient does not require intensive future medical management. His condition appears to be stable.

Tr. 192-193 (emphasis added).

    In determining Garcia's RFC, the ALJ also relied on the vocational expert's testimony. Tr. 286-290. At the administrative hearing, the ALJ asked the vocational expert (VE) if she had heard the testimony and whether she required additional information to give the ALJ a vocational assessment of Garcia's past relevant work. Tr. 286. The VE responded that she had heard Garcia's testimony and did not need additional information. The VE then opined that Garcia's

drywall finishing job was classified as medium work but as performed it was classified as heavy work. The ALJ then posed the following hypothetical question to the VE:

Q: Okay if we were to consider then hypothetically an individual with the age, educational background experience of the claimant we would find that he's limited. He's blind in his left eye since age 10. He's limited to a 35 or 40 pound weight limit but no overhead, over the head lifting. This individual should avoid surfaces because of depth perception. With those limitations, would the individual be able to do any of the past relevant work indicated?

A: No, your Honor.

Q: Transferable skills to other jobs?

A: No. They're too specialized your Honor.

Q: How about other jobs in the economy as– that might accommodate the hypothetical?

A: In the three to 40– 35 to 40 there are a few jobs at the medium level. One is day worker. That is an unskilled, medium job. That DOT is 301687014, medium, unskilled work; 869,000 jobs in the national economy and 520 jobs in New Mexico. And dishwasher, unskilled, medium work. DOT, 318687010. There's 431,000 jobs in the national economy and 4,000 jobs in New Mexico. And lastly would be odd job worker where he's working for one– there's one person, one employer. That is medium, unskilled. That DOT is 301687010. There's 869,000 in the national economy and 840 jobs in New Mexico.

Q: What about in the light range? You got something in the light range?

A:  Yes, In the light range within your hypothetical the unskilled light job of laundry folder. DOT, 361587010. There are 40,500 jobs in the national economy and 630 in New Mexico. Rental clerk, unskilled, light work, DOT 295357–

Q:  257?

A:  I'm sorry. Yeah 357.

Q:  357?

A:  295357018. There are 341,000 jobs in the national economy and 520 jobs in New Mexico. And shipping and receiving weigher. That's unskilled, light work. That DOT is 222387074. There's 131,000 jobs in the national economy and 550 jobs in New Mexico.

Q:  Okay. And those only see the weight restrictions I put on it and –

A:  Yes.

Q:  – it has occasional– an opportunity to occasionally alternate between sit and stand?

A:  Yes.

Q:  And they– takes into account the – that he's blind in one eye and no overhead work?

A:  Yes.

Q:  Ok. Mr. Martone, questions of the vocational expert?

Tr. 286-290. Relying on Dr. Reeve's evaluation, a specialist in rehabilitation medicine, and the VE's testimony, the ALJ properly determined Garcia retained the RFC to perform light to medium work. Substantial evidence supports this finding. As noted above, it is not this Court's role on appeal from this agency determination to reweigh the evidence or to substitute its judgment for that of the Commissioner. *See Hargis v. Sullivan*, 945 F.2d 1482, 1486 (10th Cir. 1994). The Court's task is only to review the record to ensure that the decision of the ALJ is

supported by substantial evidence and that the law has been properly applied.  After such review, the Court is satisfied that substantial objective medical evidence exists to support the ALJ's determination that Garcia retains the RFC for a wide range of light to medium work subject to the limitations discussed in the ALJ's decision.

## B.  Vocational Expert (VE) Testimony

Garcia contends the ALJ erred in relying on the VE's testimony to meet his burden at step five of the sequential evaluation process.  Garcia argues the VE's testimony is based upon information that does not include all of his impairments.  Pl.'s Mem. in Supp. of Mot. to Reverse at 8.  According to Garcia, the ALJ failed to include his hand impairment in his hypothetical question to the VE.  At the administrative hearing, Garcia's counsel posed the following hypothetical question to the VE.

Atty:  Let's include a limitation and use of the hands bilaterally.  Can use them to grip, hold things for about 20 minutes at a time then needs a similar break from use of his hands and then can go back and use his hands again.  But using them constantly would cause numbing and cramping and would be unable to continue.  What effect would that have on the six jobs you've identified.

VE:  So we're talking 20 minutes on and 20 minutes off?

Atty:  Yes.

VE:  Okay.  It would eliminate the medium work– medium, unskilled work.  The– it would also eliminate the laundry folder, however, the rental clerk and shipping and receiving weigher do allow for – I would reduce the numbers of those jobs by 50 percent.  But they

> do allow.  Now, there's breaks.  Between the rental clerk and shipping and receiving weigher but the other jobs would be gone.

Tr. 288-289 (emphasis added).   Hypothetical questions need not take into account all of claimant's alleged impairments.  Questions to VE are proper when they take into account the impairments substantiated by the medical reports and the impairments accepted as true by the ALJ.  *See Gay v. Sullivan,* 986 F.2d 1336, 1340-41 (10th Cir. 1993); *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990).  In this case, the evidence does not support Garcia's complaint that he could grip with his hands for only twenty minutes.  In his decision, the ALJ found, "Although he has a mild carpal tunnel syndrome, it does not significantly limit his capacity for work that does not require repetitive hand functions."  Tr. 245.  The record supports this finding.

Dr. Levitt evaluated Garcia on December 24, 1997, and noted: "Upper extremities are neurovascularly intact, but he does have a positive Finkelstein's test, and a positive Phalen's sign consistent with bilateral carpal tunnel syndrome. There is no sign of thenar atrophy or decreased range of motion or grip strength in the bilateral hands." Tr. 168.  Dr. Reeve also diagnosed Garcia with "mild carpal tunnel syndrome."  Tr. 193.  Dr. Reeve did not note any abnormality in Garcia's range of motion or grip strength of the hands.  Dr. Reeve also did not impose any restrictions as to Garcia's use of his hands.  Finally, on March 9, 1995, Garcia had a EMG.  Tr. 225.  The EMG indicated the right side studies were normal and on the left side the median motor latency was minimally prolonged which was compatible with "possible mild CTS (carpal tunnel syndrome)."  *Id.*  No treatment was recommended at that time.  Based on the medical record, the Court finds that the ALJ included the limitations that are supported by the record in his hypothetical to the VE and thus the VE's testimony provides a proper basis for the ALJ's

decision. Moreover, as the VE's testimony indicates, not all the jobs were eliminated when Garcia's counsel posed his hypothetical question which included Garcia's inability to grip with his hands for more than 20 minutes. The VE testified the jobs of rental clerk and shipping and receiving weigher would remain but be reduced by 50%.

## C.  Credibility Determination

Credibility determinations are peculiarly the province of the finder of fact and will not be upset when supported by substantial evidence. *Diaz v. Secretary of Health and Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). "Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen,* 838 F.2d 1125, 1133 (10th Cir. 1988). However, the ALJ's credibility determination does not require a formalistic factor-by-factor recitation of the evidence. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). The ALJ need only set forth the specific evidence he relies on in evaluating claimant's credibility. *Id.* The ALJ may also consider his personal observations of the claimant in his overall evaluation of the claimant's credibility. *Id.*

In evaluating a claimant's credibility regarding pain, the ALJ must consider the level of medication the claimant uses and its effectiveness, the claimant's attempts to obtain relief, the frequency of medical contacts, the claimant's daily activities, subjective measures of the claimant's credibility, "and the consistency or compatibility of nonmedical testimony with objective medical evidence." *Kepler v. Chater*, 68 F.3d 387, 391. The inability to work pain-free is not sufficient reason to find a claimant disabled. *See Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988).

Garcia contends the ALJ's finding that his complaints of pain were not credible is contrary to the evidence and the law. The Court disagrees. The ALJ noted Garcia's case had been in

litigation since 1997, yet there were no recent medical reports or records concerning his impairments. Tr. 244. The ALJ also noted that the only two reports of a medical examination were done by agency consultants and predated the initial decision of the ALJ. Tr. 244-245. The ALJ further noted there were no medical records from a treating source. The ALJ also listed (1) Garcia's activities of daily, (2) his inconsistent report to Dr. Reeve that he could lift 50 pounds yet testified he could only lift 20 pounds, (3) the fact that he took no pain medication and was not in any therapy program, (4) and the fact that he had not seen a physician since 1997. Based on the record as a whole, the Court finds it supports the ALJ's credibility determination. Accordingly, the Court finds that the ALJ's credibility determination is supported by substantial evidence and will not be disturbed.

## D.  Conclusion

The Court's role is to review the record to ensure that the ALJ's decision is supported by substantial evidence and that the law has been properly applied. After such review, the Court is satisfied that substantial evidence supports the ALJ's RFC determination and his finding of nondisability. Accordingly, the ALJ's decision is affirmed.

A judgment in accordance with this Memorandum Opinion will be entered.

          **DON J. SVET**
          **UNITED STATES MAGISTRATE JUDGE**